IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 2:06cr152-WHA |
| | ) | WO |
| HAROLD OLENDA PEAGLER | ) | |

**ORDER ON MOTION**

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing was held in this case on June 28, 2006. Based on the testimony and exhibits presented at the hearing as well as the information contained in the pretrial services report,[1] I find that the credible testimony and information establishes by clear and convincing evidence that the defendant is a danger to the community.

The indictment of the grand jury in this case establishes that there is probable cause to believe that defendant possessed a firearm (that is, a New England Firearms .32 caliber revolver) on or about October 2, 2005, despite having been convicted previously of assault in the second degree on September 22, 1995, a felony offense. In addition, defendant has a pending state charge of attempted murder which is related to his possession of the revolver referenced in the federal indictment. According to a detective from the Troy police Department, the state charge stems from an incident which began when defendant came to work at Sanders Lead Company intoxicated, and got into a verbal dispute with another worker named Edward Steele. Thereafter, defendant and Steele went back to work, but later

---

[1] The pretrial service officer recommended detention in this case.

they began to argue again. Steele, who was on an outdoor staircase above the defendant, threw a clump of mud in the direction of defendant to get his attention. Steele and the defendant were both walking toward each other. The defendant pulled a handgun from his pants pocket and shot Steele, who fell on the stair landing. Defendant came up the stairs and fired two more shots at Steele after Steele was down.[2] Defendant apparently attempted to fire a fourth round; the detective who examined the weapon found that the firing pin struck the primer on one round but the shot did not fire. After defendant shot Steele, the defendant lost possession of the gun (it either dropped or was taken away from him), but he continued to push and shove Steele until Steele was finally able to get away.

Earlier, defendant was convicted of Assault 2nd in 1995 in an incident involving another weapon. Defendant's daughter came to him after a fight with her husband in which her husband made her fall and hit the back of her head. After telling his daughter to return to her home, the defendant drove to his daughter's house and called her husband to the door. Defendant and his son-in-law began to argue. The son-in-law came toward the defendant, who reached into his car and got a .22 caliber rifle. The son-in-law started to run,[3] and

---

[2] Steele was shot once in the face, once through his left wrist and into his face (although the detective was not sure how the second wound to his face occurred, this was the most likely scenario), and once from back to front through his right shoulder.

[3] For three reasons, the court concludes that the son-in-law began to run before he was shot: (1) because defendant did not know whether or not he hit the son-in-law, which suggests that he did not fire at point blank range; (2) because the son-in-law's statement (Government's Ex. 20) indicates that he "saw the rifle and started to run," then heard a shot and felt blood going down his shoulder; and (3) because the daughter said in her statement that she saw her husband running, and "the next thing she knew she heard a shot" (Government's Ex. 19). There is no evidence that the son-in-law was armed. Thus, the defendant did not shoot in self-defense – a finding that is consistent with defendant's guilty plea on the assault charge.

defendant shot him in the shoulder.

After he was charged in 2005 with attempted murder and released on bond, defendant was indicted in the instant case. When deputy U.S. Marshals came to arrest the defendant approximately one week ago on the current charges, they found two firearms – a loaded .22 rifle and an unloaded 12 gauge shotgun – propped up inside the door of his home. They also found shotgun shells in defendant's truck in a drinking cup behind the front seat. Defendant said that the guns were for "home protection." Defendant possessed these weapons despite the fact that he said he knew that the Marshals were coming, the fact that he had a prior felony conviction, and the fact that a condition of his $100,000 bond on the attempted murder charge was that he not commit any other state or federal offense.[4]

In addition to the charges discussed above, defendant has prior charges for assault 3rd (1993), carrying a pistol without a permit (2002), and possession of a firearm by a prohibited person (2002). Two of these charges were dismissed; the fines and court costs were remitted on time served on the carrying a pistol without a permit charge.

The defendant's wife also admitted that defendant has an alcohol problem and an anger problem.

The court concludes – based on defendant's past conduct, his history relating to alcohol abuse, his criminal history, the fact that he continued to possess weapons as recently as approximately one week ago even after he was convicted of a felony, the fact that he continued to possess weapons after being released on bond on the attempted murder charge,

---

[4] The bond itself (Exhibit 17) does not reflect this condition. However, the Troy Police Department detective testified that it was her understanding that this is a condition of state bond.

and the fact that defendant has a history of poor judgment and violence when he gets angry at others – that (despite defendant's age and his disability, which have not prevented the behavior described above) there are no conditions or combination of conditions which will reasonably assure the safety of any other person and the community if defendant is released and that the defendant should be detained.

Therefore, it is ORDERED that the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE, this 30th day of June, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE